DEPARTMENT OF CORRECTIONS  
Division of Management Services  
DOC-1271A (Rev. 5/2014)

WISCONSIN  
Wisconsin Statutes  
§ 230.34 & § 111.80

# EMPLOYEE INVESTIGATION REPORTS
## NOTICE OF POTENTIAL WORK RULE VIOLATION

**INSTRUCTIONS:** Supervisor will complete and attach any relevant documentation. Route to designated reviewer and Human Resources contact via email. (Note: if not sufficiently complete after preliminary review, supervisor will be asked to add additional information to the original form with a notation for the date of the addition.)

**NOTE:** This form is set-up to self-populate the repeated fields throughout the form. For example, once you tab out of "Employee Name" field it will populate all "Employee Name" fields throughout the form. You must tab out of the field to make this happen. Please use only the locked version of the form.

| EMPLOYEE NAME (First, MI, Last) | JOB TITLE OR CLASSIFICATION | WORK UNIT |
|---|---|---|
| Lisa Purtue | Correctional Officer | DCI |

| INCIDENT DATE | INCIDENT TIME | EMPLOYEE STATUS |
|---|---|---|
| 10/1/15 | 9:15 P.M. | ☒ Permanent ☐ Probationary ☐ LTE |

**LIST POTENTIAL DOC WORK RULE(S) VIOLATED** *(See Executive Directive #43 for Department of Corrections Work Rules)*

12. Verbally threatening, intimidating, demeaning, interfering with another employee, an inmate, juvenile, offender, the public or an investigation; or using profane or abusive language with another employee, an Inmate, juvenile, offender or the public.
4. Negligence in the performance of assigned duties or failure to exercise good judgment in dealing with employees, juveniles, offenders or the public.

**LIST POTENTIAL POLICY OR PROCEDURE VIOLATED** (if applicable)

**LIST WITNESSES AND/OR POTENTIAL WITNESSES**  
Suzanne Miller

**BRIEF DESCRIPTION OF INCIDENT** (who, what, where, when and why, if known) attach related documents  
On 10/1/15 I, Lt. Arndt, was contacted by Suzanne Miller. Nurse Miller was very upset following an interaction with officer Purtue. She stated that officer Purtue was yelling. I tried to tell her the steps I would take to fix the problem but she started screaming "How will he get his med's?" at her on the phone to the point she had to end the call by hanging up the phone. She stated that she has had similar interactions with Officer Purtue in the past, and did find the behavior acceptable. A follow up email was requested, to outline the details of the interaction with officer Purtue.

| NAME OF SUPERVISOR COMPLETING REPORT | CLASSIFICATION | DATE OF REPORT |
|---|---|---|
| Lt. Arndt | Supervising Officer 1 | 10/2/15 |

**ADDITIONAL INFORMATION AND DATE ADDED**

Spell Check Test

DISTRIBUTION – Original – Investigating Authority, Official Record – ER Investigations File

**Exhibit 508 p. 001**

☒ Employee has been given an opportunity to review the notes of this interview.
　　☒ Employee chose to review notes  or  ☐ Employee declined to review notes

Spell Check Test

Exhibit 508 p. 002

**Kooiman, Sandra K - DOC**

From: Miller, Suzanne T - DOC
Sent: Thursday, October 01, 2015 9:15 PM
To: Arndt, Davis R - DOC

I called you this evening regarding the officer on unit 22 . C.O. Pertue called about a discrepancy between the med sheets and med card but became agitated when at 08:30 pm I could not fix the problem as we spoke. This is a common occurrence we have when dealing with this officer. I tried to tell her the steps I would take to fix the problem but she started screaming "How will he get his med's?" Then a moment later yelling that she was confused, but would not allow me to finish a sentence. When she continued to yell I ended the phone call. I did research the problem she reported and the problem was remedied tonight . I the yelling and interruptions I could do without. This is something she does often and it is to the point no one really wants to work with her any more. She is often unrealistic and demanding. She calls often to tell us an inmate needs something but will not take our word that the item has been sent or was not ordered. She refuses to check the inmates room for items we have a record that they have received but wants us to send more. She often yells and becomes agitated with us and tells us that inmates have sent in blue slips when they have not.
Sorry for the troubling you but this has really gone too far for too long.
Thank you for your time ,
S.MillerLPN

Exhibit 508 p. 003

**Kooiman, Sandra K - DOC**

**From:** Dittmann, Beth S - DOC
**Sent:** Monday, October 05, 2015 10:03 AM
**To:** Arndt, Davis R - DOC
**Subject:** FW: Medication sheets

I hadn't had a chance to speak with Sue Miller, LPN yet regarding this interaction – would you prefer I not to speak with her? Is Sue Miller being investigated?

**From:** Dittmann, Beth S - DOC
**Sent:** Monday, October 05, 2015 9:56 AM
**To:** Arndt, Davis R - DOC
**Subject:** FW: Medication sheets

Here is the email you requested.

**From:** Dittmann, Beth S - DOC
**Sent:** Friday, October 02, 2015 7:54 AM
**To:** Purtue, Lisa A - DOC
**Subject:** RE: Medication sheets

I'll follow with Sue. Thanks for the email.

Beth Dittmann, RN, CCHP, Nursing Supervisor
Dodge Correctional Institution
Primary Care Unit
920-324-6266

**From:** Purtue, Lisa A - DOC
**Sent:** Thursday, October 01, 2015 9:22 PM
**To:** Dittmann, Beth S - DOC
**Subject:** Medication sheets

Good morning Ms. Dittmann,

I had an incident last night with one of your nurses. Nurse Sue, who was not only rude to me on the phone as I was trying to explain two different situations that reflected the med sheet being inaccurate, but also hung up the phone on me. "Whatever" is not an answer to any situation that needs to be addressed, especially when it comes to doctor prescribed medications.
The med sheet stated on both, Am-N-PM instead of what we have been giving them according to the med card, Am-Pm-HS. This nurse was very dismissive as if it was not important to rectify. I must say, I tried to call back after being hung up on and it was busy, so I left a message with all the information needed. Nurse Mary called back a little while later to tell me that the med card was correct and the med sheet was wrong. Mary apologized profusely and had me cross out the Noon and place HS and then dispense the medication to the inmates in question. Mary is wonderfully professional unlike Nurse Sue. This is not the first time I have had to deal with the negativity from Nurse Sue.

Thank you,

Exhibit 508 p. 004


**Lisa Purtue**
**Correctional Officer**
**Dodge Correctional Institution**
**1-920-324-5577**

*"Man is nothing else but what he makes of himself"*
*Jean – Paul Sartre*

Exhibit 508 p. 005

10-1-15 blue slip started 9-29-15

Shaw, Alan
Baclofen Am & PM switch
to Am Pm HS per
med card

Haberberger, Joseph — started
Gabapentin 600 3 times daily
Am - N - PM switch
Am Pm HS per med
card

5/23 Mary called back later and
stated I was right to scan
out noom & place med

**Exhibit 508 p. 006**

| DEPARTMENT OF CORRECTIONS<br>Division of Management Services<br>DOC-1271D (Rev. 5/2014) | | WISCONSIN<br>Wisconsin Statutes<br>§ 230.34 & § 111.80 |
|---|---|---|

## EMPLOYEE INVESTIGATION REPORTS
### INVESTIGATORY INTERVIEW

| INVESTIGATOR INSTRUCTIONS: | Document the content of an investigatory meeting with an individual interviewed as part of an employee investigation. |
|---|---|

| EMPLOYEE NAME (First, MI, Last)<br>Lisa Purtue | | | INCIDENT DATE<br>10/1/15 | INVESTIGATION NO.<br>328-2015-075 |
|---|---|---|---|---|
| NAME OF INTERVIEWEE (First, MI, Last)<br>Suzanne Miller | JOB CLASSIFICATION<br>Nurse | INTERVIEWEE STATUS<br>☐ Subject ☒ Witness | INTERVIEW DATE<br>10/2/15 | TIME<br>6:00 P.M. |
| PERSONAL REPRESENTATIVE PRESENT - NAME:<br>Officer Esselman | | INVESTIGATOR NAME:<br>Lt. Arndt / Lt. Schultz | | |

REVIEW EACH OF THE FOLLOWING STEPS AS INDICATED WITH THE EMPLOYEE AND CHECK EACH BOX UPON COMPLETION

☒ General statement of the purpose of interview explained to the employee. No decision will be made until all the facts of the investigation are considered.

☒ Duty to cooperate with investigation read aloud to employee:
"You are required by work rule #6 to answer fully and completely the questions put to you to the best of your ability. If you refuse to answer, you may be disciplined for that refusal in addition to any other discipline, which may be imposed for other conduct. Management may also rely on other sources of information for its conclusion of facts."

CONTENT OF INTERVIEW – *Interviews and notes are conducted in Question and Answer format and may be completed on separate attachments.*

Q: You reported an incident concerning officer Purtue on 10/1/15, can you describe what occurred?

A: Well, I was aware that she had some questions on some meds so i called her unit. She was passing medications so she couldn't talk. Later on she called back and said, she had questions on two guys medications, because the med sheets seemed wrong. So i looked for the hard cards, i found them, according to that it looked like the bubble packs for the meds were wrong. But i was going to check the charts anyway, she wouldn't let me talk, she started yelling, i tried to explain what my plan was, but she started yelling how is he going to get his meds, and she wouldn't let me finish a sentence, it was very frustrating, I was trying to get anywhere with her, she wouldn't let me talk, she was really yelling then, i couldn't get her to stop, i couldn't get the job done with being yelled at, the only way I could do my job was to actually go out and check the chart. It turned out she was right, but she was not nice, i asked Anderson to go down pick up the med sheets so i could fix them, then he was going to turn around and bring them right back to the unit right away. So he went down there, and he witnessed this part he said that she was on the phone with Mary, and she was saying she was going to write me up because i was so mean. I went back to the med room and Mary said she fixed it, I don't know when Mary got involved. I was under the impression when I left that everything was corrected, on our way out Mary said that Purtue had changed the med sheet, but i guess Mary told her to change the med sheet, i don't know why Mary got involved, it was very frustrating when Purtue, calls, she threatens to write us up, and call Beth, sometimes she's right and sometimes she is wrong.
Today Purtue had Sarah (LPN med room) call the med room to find out where an inmate's medications were; apparently they said they were missing according to Purtue, or they never got delivered. I looked it up and they had been delivered on the 19th of last month. Then I called the locator guy, and asked him where the guy was last, he said he was in 22 in a different cell, and prior to that he had been on 19. So I called 19, and asked if the meds were there, they said no, a little while later I was going to re order them, Sarah later said that Purtue hadn't looked for them they were in the cart. It was a waste of time to go on a goose chase because somebody doesn't want to look in a drawer. I understand that Purtue put the meds aside because the guy was refusing them, but you are not supposed to do that, you are supposed to keep offering them. Instead Purtue called us and reported them missing.

So then, 17 called me, and said they were missing medication for a guy. Sarah happened to come back, She pulled those meds, and it turned out Purtue forgot to send them when he moved. It just creates a lot of unnecessary running.

Q: How would you describe the way Purtue was speaking to you last night?
A: She started out kinda hissing, (emphasizing letters), kind of hostile. It sounded hostile to me.

Q: You said yelling, what do you mean by that?
A: She was talking like this (stated in a loud tone)

Q: Did anyone else here that?
A: No.

Q: You stated officer Anderson reported that Purtue had mentioned writing you up?
A: Yeah, she said she was going to write me up, and tell Beth how mean I was. She seems to always having an expectation of having a problem resolved before you get off of the phone, and it is unrealistic, there is paperwork involved.

Q: You tried explaining the steps to her?
A: Yeah, she got really mad with what I initially tried to inform her that I have to check the chart because it is where the best information is, but she wouldn't even let me finish a sentence.

Q: Did it make your job more difficult to accomplish?
A: Oh yeah, yeah I was wasting time, and being on the phone, and having to wait for her to settle down. I didn't want to go down there myself because I was upset, and I didn't want to say anything inappropriate, so that's why I asked Anderson to help and go down there for me.

Q: At one point you stated she does this all the time?
A: Not just me, the RN's, Keith, Hoban, and Barry, have all said that she has called them up and raised hell because she did not get the answer she wanted.

Q: What was your demeanor on the phone with officer Purtue?
A: I didn't think it was unprofessional at all, I try to stay calm, I just tried to answer the questions, restart the questions when she interrupted me, after that I just gave up and tried to get back to my duties. And go through the med sheets and all the information and get it back to her so it would be all done.

Q: How did the call end?
A: I hung up on her, because she would not stop yelling, wouldn't let me talk, I could not get anywhere; I just figured she would not give up. I hung up, I knew that would make her mad to, but I was hoping that I could gather the information, and get back to her, and that would calm her down.

Q: Did you tell her you would be ending the call?
A: No, she was yelling, I couldn't get a word in.

Q: When you found the discrepancies did you call her to explain?
A: No, that's when I asked Anderson to go down there, so that the situation did not become more enflamed, and I didn't want to deal with it face to face because I didn't like being yelled at.

Q: You stated she refuses to check inmate's rooms for items, what gives you that impression?
A: Because when an inmate moves to another unit we get doubles of everything's that she said were not there. Like yesterday Sarah was dealing with her, after she was yelling at Sarah saying the inmates needs it, but it was baby aspirin, it was nothing urgent. When she is on a unit for a while they just ask her to call instead of sending blue slips.

Q: Instead of having the inmate put in a blue slip, she just ends up calling?
A: Yeah, and we don't want them to get out of the habit of not putting in a blue slip, because it is part of the procedure, and it gives them a little responsibility. But she often calls and says they already did, they told me.

Q: Is there anything else?
A: Not that I can think of.

REVIEW EACH OF THE FOLLOWING STEPS AS INDICATED WITH THE EMPLOYEE AND CHECK EACH BOX UPON COMPLETION
☒ Employee has been advised that retaliation against a participant of the investigation is prohibited.

| | | | |
|---|---|---|---|
| DEPARTMENT OF CORRECTIONS<br>Division of Management Services<br>DOC-1271D (Rev. 5/2014) | | | WISCONSIN<br>Wisconsin Statutes<br>§ 230.34 & § 111.80 |

## EMPLOYEE INVESTIGATION REPORTS
## INVESTIGATORY INTERVIEW

INVESTIGATOR INSTRUCTIONS: Document the content of an investigatory meeting with an individual interviewed as part of an employee investigation.

| EMPLOYEE NAME (First, MI, Last)<br>Lisa Purtue | | | INCIDENT DATE<br>10/1/15 | INVESTIGATION NO.<br>328-2015-075 |
|---|---|---|---|---|
| NAME OF INTERVIEWEE (First, MI, Last)<br>Officer Purtue | JOB CLASSIFICATION<br>Correctional Officer | INTERVIEWEE STATUS<br>☒ Subject ☐ Witness | INTERVIEW DATE<br>10/5/15 | TIME |
| PERSONAL REPRESENTATIVE PRESENT - NAME<br>Officer E. Faicco | | INVESTIGATOR'S NAME (First, MI, Last)<br>Lt. Arndt / Lt. Schultz | | |

REVIEW EACH OF THE FOLLOWING STEPS AS INDICATED WITH THE EMPLOYEE AND CHECK EACH BOX UPON COMPLETION

☒ General statement of the purpose of interview explained to the employee. No decision will be made until all the facts of the investigation are considered.

☒ Duty to cooperate with investigation read aloud to employee:
"You are required by work rule #6 to answer fully and completely the questions put to you to the best of your ability. If you refuse to answer, you may be disciplined for that refusal in addition to any other discipline, which may be imposed for other conduct. Management may also rely on other sources of information for its conclusion of facts."

CONTENT OF INTERVIEW – *Interviews and notes are conducted in Question and Answer format.*

Q: Did you work on October 1st, 2015?
A: Yes.

Q: During your shift did you interact with Nurse Miller in prime care?
A: I believe that was her name, Mary told me that was the only other woman in there because I was trying to get her name.

Q: Was it a positive interaction, or a negative interaction?
A: It was positive on my end, it was negative on her end.

Q: Why?
A: Because she said "whatever" and hung up on me. She copped an attitude the whole time I was trying to tell her the problem I was trying to fix with the medication, she didn't even bother to look up anything, she didn't even care what I was trying to explain to her. It was very dismissive, I have a witness that was there that witnessed the whole interaction, and that would be c/o Arendsee.

Q: It occurred over the phone?
A: Yes. And after this interaction I sent Beth Dittmann an email in regards to this interaction, and how unprofessional it was, I'm sure she has a copy of that email. Because she responded to me that she would look into it.

Q: How would Arendsee know what occurred on the phone?
A: Because he heard my end of it, he was sitting right next to me. After I was hung up on, I told Arendsee, he said this is what you do, he said call back, I tried to call back but the line was busy. He said call back and leave a message, and then you have done your part. So that's what I did, I called back and left a message with all of the information for the inmates in question, and that was it. Approximately 15 minutes later I received a phone call from Mary in the med room, she stated to me that I was right, that the med card should match the med sheet, and I should go and cross out the noon on both med sheets, and put HS on both and her initials, she was very professional to me, and she apologized. It wasn't even Mary who caused anything, she just apologized.

Q: You wrote an email to Beth Dittmann stating that Nurse Miller was inappropriate in her interactions with you, can you describe why?

DISTRIBUTION – Original – Investigating Authority, Official Record – ER Investigations File

**Exhibit 508 p. 009**

A: Because she talked to me like I was a special needs person, and made me repeat things over and over again, and told me that I needed to send the med cards back to the pharmacy to get updated so that they matched the med sheet. So she didn't really follow up with anything, she didn't look at anybody's record or anything is how I took it, she was very dismissive. I was trying to relay the information to her about the gentleman's medications, and she said whatever, and hung up on me.

Q: What was your tone during the interaction?
A: The same tone that I have with everyone, just like I'm talking to you. And Arendsee said if he is called up for an interview, he will tell his side, and that he was sitting right there, and I have nothing to worry about.

Q: Were you frustrated during the incident?
A: No, I was confused. And I told her she was confusing me, because what she was telling me didn't make any sense. I didn't tell her that, I just said she was confusing me, then I started giving her the dates that they were getting their meds, and that's when she said 'whatever' and hung up.

Q: Was she speaking in a louder than normal tone?
A: Yes, and she was talking to me like I was a kid.

Q: Would you say she was yelling?
A: She was talking really loud. Kinda like sassy.

Q: At some point did she explain that she had to look in the chart?
A: No, none of that at all, I wrote on a piece of paper which ones needed to be resolved, and I don't think she took me seriously, and she spoke to me slowly like I was special needs, saying "read what it says on the med card, not what is in marker, what is on the med card" so I read the med cards, and she said that both cards need to be sent to the pharmacy because what is on the sheet is correct, what is on the card is wrong. I said I know these inmates have been getting these medications for a while now, and these are the times I have been giving them, but the new med sheets say AM N And PM, and I didn't even get that far that's when she hung up.

Q: She didn't say I have to go check this?
A: No, I'm not special needs by any means, I look at the med sheets, and put on the card whatever the med sheet says. We are professionals, we don't just put on the cards whatever we want, but I do read what the med sheets say. I didn't even know who the nurse I was talking about. Later Mary called, and she said I was right, and the med sheets were wrong, and go ahead and put my initials on. I asked her who else she was working with, so I included that in my email. My email was very professional; I was just describing the behavior of the person. I am very thorough at the beginning of the month, because that is when we go through a lot of changes. The last time I did this, I told you (Schultz) that I had a page of errors, and the nurse came down so we could get it resolved, and the nurse just threw it away, so I had to contact HSU many times to get the errors fixed. That was a different nurse, she has a bad attitude in general, and I don't know how you could come to work and have a bad attitude like that. I think they depend on us to double check; it is like a courtesy for us. Mary checked on it, it was rectified, and she said she was sorry. That was it. I was able to give the two guys their medication.

Q: Was there any time before she hung up, that she was trying to speak at the same time you were trying to speak?
A: You mean was I talking over her? No. I tried to interrupt her just once, but that was when I was trying to go over the dates and I said I was confused, there was no time that she said just let me check and go to verify it, and that's what nurses do. That was at the end of the conversation.

Q: What was at the end of the conversation?
A: Um... when I told her she was confusing me, and I was trying to give her the dates of when the guys started the medications, that was in the previous month approximately, that was when she said whatever and hung up, she over talked me actually, she was just being rude. I am ....tired all the time. This is what I have, just trying to get it rectified.

Q: So at points in the conversation, you both interrupted each other?
A: I only interrupted her at the end when she said I would have to send the med cards to the pharmacy, and that's when I said you are confusing me.

DISTRIBUTION – Original – Investigating Authority, Official Record – ER Investigations File

Exhibit 508 p. 010

Q: And she hung up after that?
A: Yeah, she said "whatever" and hung up as I was giving her the dates that she started the medications.

Q: Is there anything else you can think of that we didn't ask that you would like to add?
A: I nicely asked Arendsee if he heard my conversation with the nurse, and there was nothing wrong with what you said, that you were professional, and I asked him if he would come up with me, and he said "no, I haven't been up there in 22 years and I'm not going to start now, unless they call me as a witness and then I will go up there for you."

I just think personally, that this lady got her feelings hurt, so she reported the incident to her supervisor; this is just retaliation because she got her feelings hurt. I don't take any of it personal, this is like a daily thing for me to put out fires, it is on a small scale, just a unit, not like the whole building like you guys.

(Following the interview Purtue submitted a post it note as evidence)

REVIEW EACH OF THE FOLLOWING STEPS AS INDICATED WITH THE EMPLOYEE AND CHECK EACH BOX UPON COMPLETION
- ☒ Employee has been advised that retaliation against a participant of the investigation is prohibited.
- ☒ Employee has been given an opportunity to review the notes of this interview.
  - ☐ Employee chose to review notes  or  ☒ Employee declined to review notes

DEPARTMENT OF CORRECTIONS  
Division of Management Services  
DOC-1271B (Rev. 5/2014)

WISCONSIN  
Wisconsin Statutes  
§ 230.34 & § 111.80

# EMPLOYEE INVESTIGATION REPORTS
## REVIEW OF POTENTIAL WORK RULE VIOLATION

INSTRUCTIONS: Review potential work rule violation to determine next course of action; mark appropriate selection(s) below.

| EMPLOYEE NAME (First, MI, Last) | JOB TITLE OR CLASSIFICATION | INCIDENT DATE |
|---|---|---|
| Lisa Purtue | Correctional Officer | 10/1/15 |

ACTION TO BE TAKEN:

☐ More information needed. Contact the supervisor directly for follow-up (who, what, where, why, when, etc.). Original DOC-1271A should be resubmitted with additional information added and date of update noted.

RESPOND BY DATE:

☐ No work rule violation occurred. Further investigation is unwarranted, supervisor and employee are notified if appropriate (consult with Human Resources).

☐ Sufficient information has been provided to determine an <u>attendance</u> infraction equivalent to a work rule violation occurred. Assign and forward to supervisor for investigatory/pre-disciplinary process. Supervisor will conduct investigatory/pre-disciplinary meeting with employee once personal representative is offered.

☒ Provided information warrants further investigation.  
Identify investigators assigned: Lt. Arndt

| SPECIAL CONSIDERATIONS/ACTIONS NECESSARY | DATE ACTION TAKEN | CONTACT PERSON |
|---|---|---|
| ☐ Immediate Action Necessary: | | |

☒ Work Status of Employee During Investigation  
☐ Temporary Reassignment  ☐ Admin Leave with Pay  ☐ Admin Leave without Pay  ☒ No Change  ☐ Other: _____

☐ Conduct Involves Possible Criminal Violation(S)  
☐ Referrals and Notifications:  
  ☐ PREA (OSO Chief will be notified by Division HR cc to BPHR ER)  
  ☐ ODES (ODES Director will be notified by Division HR cc to BPHR ER)  
  ☐ OLC (OLC will be notified by Division HR cc to BPHR ER)  
  ☐ OSO (will be notified by Division Administrator or Assistant Administrator)  
  ☐ Secretary's Office (Deputy Sec. notified by Division cc to BPHR Director)  
  ☐ Oddsen Notice (OLC, BPHR Director notice and see form DOC-1271G)  
  ☐ Law Enforcement (OLC & BPHR Director notified by Division HR)  
  ☐ Other:

ADDITIONAL COMMENTS

| DIVISION/WORK UNIT HUMAN RESOURCE REVIEWER(S) | DATE OF REVIEW |
|---|---|
|  |  |
| APPOINTING AUTHORITY (Bureau Director, Regional Chief, Superintendent, Warden)<br>Marc W. Clements | DATE OF REVIEW<br>10/09/15 |
| DIVISION ADMINISTRATOR | DATE OF REVIEW |

INVESTIGATION NUMBER (Assigned by HR): (e.g. ER-DCC-R1-11-001)  
328-2015-075

DISTRIBUTION – Original – Investigating Authority, Official Record – ER Investigations File

**Exhibit 508 p. 012**

DEPARTMENT OF CORRECTIONS
Division of Management Services
DOC-1271C (Rev. 5/2014)

WISCONSIN
Wisconsin Statutes
§ 230.34 & § 111.80

# EMPLOYEE INVESTIGATION REPORTS
## INVESTIGATION CHRONOLOGICAL LOG

INVESTIGATOR INSTRUCTIONS: This form is to document the chronological sequence of events beginning with the initiation of the investigation. Record all interviews, meetings, and other significant events of the investigation.

| EMPLOYEE NAME (First, MI, Last) | JOB TITLE OR CLASSIFICATION | Exempt / Non-Exempt | INCIDENT DATE | INVESTIGATION NO. |
|---|---|---|---|---|
| Lisa Purtue | Correctional Officer | ☒ Non-Exempt | 10/1/15 | 328-2015-075 |

| DATE | DESCRIPTION OF EVENT |
|---|---|
| 10/1/15 | Notifications of interactions between Suzanne Miller, and Officer Purtue |
| 10/2/15 | 1271 initated by Lt. Arndt, investigation assigned by Security Director Radtke |
| 10/2/15 | Initial Interview with Suzanne Miller, (waived 24 hour notice) |
| 10/5/15 | Initial Interview with officer Purtue |
| 10/5/15 | Initial Interview with Officer Arendsee (waived 24 hour notice) |
| 10/5/15 | Initial Interview with Lt. Schultz |
| 10/21/15 | Letter delivered to employee by Lt. Schultz. |

| INVESTIGATOR'S NAME (First, MI, Last) | INVESTIGATOR'S CLASSIFICATION/TITLE | DATE |
|---|---|---|

FINAL DISPOSITIION:
No Action

PRIOR DISCIPLINES:

| Effective Date | Description & work rules | Disposition |
|---|---|---|
| NA | | |

DISTRIBUTION – Original – Investigating Authority, Official Record – ER Investigations File

**Exhibit 508 p. 013**

| DEPARTMENT OF CORRECTIONS | | WISCONSIN |
|---|---|---|
| Division of Management Services | | Wisconsin Statutes |
| DOC-1271D (Rev. 5/2014) | | § 230.34 & § 111.80 |

## EMPLOYEE INVESTIGATION REPORTS
### INVESTIGATORY INTERVIEW

**INVESTIGATOR INSTRUCTIONS:** Document the content of an investigatory meeting with an individual interviewed as part of an employee investigation.

| EMPLOYEE NAME (First, MI, Last) | | | INCIDENT DATE | INVESTIGATION NO. |
|---|---|---|---|---|
| Lisa Purtue | | | 10-1-15 | 328-2015-075 |

| NAME OF INTERVIEWEE (First, MI, Last) | JOB CLASSIFICATION | INTERVIEWEE STATUS | INTERVIEW DATE | TIME |
|---|---|---|---|---|
| Officer Arendsee | Correctional Officer | ☐ Subject  ☒ Witness | 10/5/15 | 6:45 P.M. |

| PERSONAL REPRESENTATIVE PRESENT - NAME: | INVESTIGATOR NAME: |
|---|---|
| None Requested | Lt. Arndt / Lt. Schutlz |

REVIEW EACH OF THE FOLLOWING STEPS AS INDICATED WITH THE EMPLOYEE AND CHECK EACH BOX UPON COMPLETION

☒ General statement of the purpose of interview explained to the employee. No decision will be made until all the facts of the investigation are considered.

☒ Duty to cooperate with investigation read aloud to employee:
"You are required by work rule #6 to answer fully and completely the questions put to you to the best of your ability. If you refuse to answer, you may be disciplined for that refusal in addition to any other discipline, which may be imposed for other conduct. Management may also rely on other sources of information for its conclusion of facts."

CONTENT OF INTERVIEW – *Interviews and notes are conducted in Question and Answer format and may be completed on separate attachments.*

Q: Did you work October 1st?
A: I did.

Q: Did Officer Purtue speak to somebody in Prime care regarding medication?
A: Yes, later in the evening, I don't remember a time frame.

Q: During the conversation, where were you?
A: I was sitting at the desk right next to her, actually listening very intently, because a lot of the nurses ask staff to change the cards, so I was trying to re-train her, so I was actually paying a lot of attention to her, as it has been about 2 weeks she has been on the unit.

Q: Could you hear both sides of the conversation?
A: No, just her (Purtue).

Q: What was your impression of the conversation?
A: Just a standard interaction of her asking about what med card had a.m., p.m., hs. She had two different inmates, she just asked standard questions, I didn't pay to much attention to the intent of the conversation, it seemed like she asked all the right questions. The last thing I remember her saying is, 'I'm confused', and after that she just looked at me and said she hung up on me, there was nothing out of the ordinary from my side, she was just asking the time and place for medications from each inmate. And then, after she was hung up on, I asked did you get the information you needed, she said no. I said call back and even if you get a voice mail, leave all the information you have just as a CYA thing, so that you can get it all fixed with the distribution, and the times. So she called, and left a voicemail to the med room, between that point and the two calls I figured that situation was covered with the information they had, and we just let it be.

Q: What was her demeanor on the phone?
A: She talks very fast, professional, pertinent, and to the point.

Q: Was her voice raised during the call?
A: Nope.

Q: Did it sound like an argument was occurring?
A: No. She just seemed confused with the information she was getting, about the medication and the times.

Page 1 of 2

**Exhibit 508 p. 014**

Q: is there anything else you can think of that we didn't ask?
A: Not really, after she was hung up on, and I directed her to call the voicemail, I thought the situation was over with and we had covered it as best as we could with the medication situation.

---

REVIEW EACH OF THE FOLLOWING STEPS AS INDICATED WITH THE EMPLOYEE AND CHECK EACH BOX UPON COMPLETION
- ☒ Employee has been advised that retaliation against a participant of the investigation is prohibited.
- ☒ Employee has been given an opportunity to review the notes of this interview.
  - ☐ Employee chose to review notes   or   ☒ Employee declined to review notes

Spell Check Test

| DEPARTMENT OF CORRECTIONS<br>Division of Management Services<br>DOC-1271D (Rev. 5/2014) | EMPLOYEE INVESTIGATION REPORTS<br>INVESTIGATORY INTERVIEW | WISCONSIN<br>Wisconsin Statutes<br>§ 230.34 & § 111.80 |

INVESTIGATOR INSTRUCTIONS: Document the content of an investigatory meeting with an individual interviewed as part of an employee investigation.

| EMPLOYEE NAME (First, MI, Last)<br>Lisa Purtue | | | INCIDENT DATE<br>10/5/15 | INVESTIGATION NO.<br>328-2015-075 |
|---|---|---|---|---|
| NAME OF INTERVIEWEE (First, MI, Last)<br>Lt. Schultz | JOB CLASSIFICATION<br>Supervising Officer 1 | INTERVIEWEE STATUS<br>☐ Subject  ☒ Witness | INTERVIEW DATE<br>10/5/15 | TIME<br>9:40 P.M. |
| PERSONAL REPRESENTATIVE PRESENT - NAME:<br>None Requested | | INVESTIGATOR NAME:<br>Lt. Arndt | | |

REVIEW EACH OF THE FOLLOWING STEPS AS INDICATED WITH THE EMPLOYEE AND CHECK EACH BOX UPON COMPLETION

☒ General statement of the purpose of interview explained to the employee. No decision will be made until all the facts of the investigation are considered.

☒ Duty to cooperate with investigation read aloud to employee:
"You are required by work rule #6 to answer fully and completely the questions put to you to the best of your ability. If you refuse to answer, you may be disciplined for that refusal in addition to any other discipline, which may be imposed for other conduct. Management may also rely on other sources of information for its conclusion of facts."

CONTENT OF INTERVIEW – *Interviews and notes are conducted in Question and Answer format and may be completed on separate attachments.*

Q: Have you interacted with Officer Purtue concerning her communication with fellow staff?
A: Yes.

Q: Have you done that more than once?
A: Yes. When I talk to her it is about working together as a team. Taking constructive criticism, talking with senior staff, and getting their help when needed, following the chain of command, trying to resolve personality conflicts with staff on a one to one basis, recognizing that they are personality conflicts.

Q: Have you spoken to her concerning this during PPD sessions?
A: Yes, during PPD sessions, sometimes during unit rounds, during a meeting I had with her and Lt. Kumber about multiple incidents that were reported.

Q: Have the conversations been received well?
A: Usually, she leaves with thank you for your suggestions.

Q: Is it a recurring issue?
A: Yes, it depends on who she works with, and who she has to communicate with at the time.

Q: Is there anything else you would like to add?
A: I think she needs to find a better way to resolve conflict, to find ways to positively interact with coworkers.

REVIEW EACH OF THE FOLLOWING STEPS AS INDICATED WITH THE EMPLOYEE AND CHECK EACH BOX UPON COMPLETION

☒ Employee has been advised that retaliation against a participant of the investigation is prohibited.
☒ Employee has been given an opportunity to review the notes of this interview.
  ☒ Employee chose to review notes   or  ☐ Employee declined to review notes

Spell Check Test

DEPARTMENT OF CORRECTIONS
Division of Management Services
DOC-1271E (Rev. 5/2014)

WISCONSIN
Wisconsin Statutes
§ 230.34 & § 111.80

## EMPLOYEE INVESTIGATION REPORTS
### SUMMARY OF INVESTIGATION FINDINGS

INVESTIGATOR INSTRUCTIONS: Summarize the findings and conclusions of the investigation. Attach all supporting documentation.

| EMPLOYEE NAME (First, MI, Last) | JOB TITLE OR CLASSIFICATION | INCIDENT DATE | INVESTIGATION NO. |
|---|---|---|---|
| Lisa Purtue | Correctional Officer | 10/1/15 | 328-2015-075 |

SUMMARY OF CONDUCT (Report facts only – no opinions or recommendations)

POTENTIAL DOC WORK RULE(S) VIOLATED (See Executive Directive #43 for Department of Corrections Work Rules)

| WORK RULE # | WORK RULE AND SUPPORTING SPECIFIC FACTUAL INFORMATION/ DOCUMENTATION |
|---|---|
| | |
| | |
| | |
| | |

SPECIFY POLICY OR PROCEDURE VIOLATED (If Applicable)

| INVESTIGATOR'S NAME (First, MI, Last) | INVESTIGATOR'S CLASSIFICATION/TITLE | DATE |
|---|---|---|
| | | |

DISTRIBUTION – Original – Investigating Authority, Official Record – ER Investigations File

**Exhibit 508 p. 017**

DEPARTMENT OF CORRECTIONS  
Division of Management Services  
DOC-1271F (Rev. 5/2014)

WISCONSIN  
Wisconsin Statutes  
§ 230.34 & § 111.80

# EMPLOYEE INVESTIGATION REPORTS
## PRE-DISCIPLINARY MEETING

**INSTRUCTIONS:** The Pre-disciplinary Team documents the content of the pre-disciplinary meeting and any exhibits provided. Route complete packet to Disciplinary Action Review Team (DART Team). *Note: Human Resources will determine the information content for the employee's review as well as any required redaction. This information will be available to the employee at the pre-disciplinary meeting.*

| EMPLOYEE NAME (First, MI, Last) | JOB TITLE OR CLASSIFICATION | INCIDENT DATE | INVESTIGATION NO. |
|---|---|---|---|
| Lisa Purtue | Correctional Officer | 10/1/15 | 328-2015-075 |

**PRE-DISCIPLINARY**

| INTERVIEW DATE   TIME | PERSONAL REPRESENTATIVE PRESENT – NAME | INVESTIGATOR NAME |
|---|---|---|
|  |  |  |

COMPLETE EACH STEP NOTED BELOW AND CHECK EACH BOX SIGNIFYING COMPLETION

☐ Pre-disciplinary notice read aloud and employee acknowledges receipt  
☐ Review evidence and identify portions relied upon to conclude a work rule violation has occurred (*read 1271E Summary*)  
☐ READ TO EMPLOYEE: *Are there any mitigating factors you want us to consider?*

EMPLOYEE RESPONSE

CHECK THE BOX BELOW SIGNIFYING COMPLETION OF THE STEP NOTED

REVIEW EACH OF THE FOLLOWING STEPS AS INDICATED WITH THE EMPLOYEE AND CHECK EACH BOX UPON COMPLETION  
☐ Employee has been advised that retaliation against a participant of the investigation is prohibited.  
☐ Employee has been given an opportunity to review the notes of this interview.  
   ☐ Employee chose to review notes  or  ☐ Employee declined to review notes

DISTRIBUTION – Original – Investigating Authority, Official Record – ER Investigations File

**Exhibit 508 p. 018**

| DEPARTMENT OF CORRECTIONS<br>Division of Management Services<br>DOC-1271G (Rev. 5/2014) | | WISCONSIN<br>Wisconsin Statutes<br>§ 230.34 & § 111.80 |
|---|---|---|

## EMPLOYEE INVESTIGATION REPORTS
### NOTICE FOR INVESTIGATIONS INVOLVING CRIMINAL MATTERS

INSTRUCTIONS: HR determines appropriate option below. Investigator will read designated option aloud to employee prior to conducting the investigatory interview and obtain appropriate signatures.

| EMPLOYEE NAME (First, MI, Last)<br>Lisa Purtue | JOB TITLE OR CLASSIFICATION<br>Correctional Officer | INVESTIGATION NO.<br>328-2015-075 |
|---|---|---|

In investigations into conduct which may constitute a crime as well as a dischargeable offense, neither a public employee's statements nor refusal to answer will be allowed as grounds for discharge where he or she is required to answer the questions, unless the employee has been warned that the statements cannot be used against him or her in criminal proceedings.

CHECK ONE OPTION BELOW

NOTICE OF RIGHTS

This is an administrative investigatory interview. Staff has the right to personal representation. The results of this interview will be used for employment purposes. This is not a criminal investigation but since the work rules prohibit illegal conduct, inquiry into illegal acts may be pursued to determine whether there has been a work rule violation. The charges involved here are serious and may involve future criminal charges.

☐ You are required per work rule #6 to answer fully and completely the questions asked of you to the best of your ability. If you refuse to answer, you may be disciplined for that refusal, in addition to any other discipline which may be imposed for other conduct. If any answer or statement given by you here may tend to incriminate you criminally, by law, such evidence may <u>not</u> be used against you in any future criminal proceedings. Therefore, nothing obtained from this interview that might incriminate you can or will be shared with law enforcement. Because of this you are compelled to answer any questions asked of you in this meeting.

☐ Although we are not conducting a criminal investigation, the answers you give here may also be used in a criminal proceeding initiated by a District Attorney or the Attorney General. Although this is not a criminal investigation, we intend to cooperate fully with any criminal investigation by a law enforcement agency. You are requested to truthfully answer the questions we ask you. It is not mandatory that you answer these questions. You are requested to voluntarily respond to these questions. Since this is not a criminal investigation, we may infer that the allegations against you are true if you decline to answer these questions.

| EMPLOYEE SIGNATURE | | DATE SIGNED: |
|---|---|---|
| PERSONAL REPRESENTATIVE NAME | PERSONAL REPRESENTATIVE SIGNATURE: | DATE SIGNED: |
| PRINT/TYPE INVESTIGATOR NAME | INVESTIGATOR'S SIGNATURE: | DATE SIGNED: |

DISTRIBUTION – Original – Investigating Authority, Official Record – ER Investigations File

**Exhibit 508 p. 019**

DEPARTMENT OF CORRECTIONS  
Division of Management Services  
DOC-1271H (Rev. 5/2014)

WISCONSIN  
Wisconsin Statutes  
§ 230.34 & § 111.80

# EMPLOYEE INVESTIGATION REPORTS
## NOTICE OF POTENTIAL WORK RULE VIOLATION
## EVIDENCE LOG

| EMPLOYEE NAME (First, MI, Last) | JOB TITLE OR CLASSIFICATION | INVESTIGATION NUMBER |
|---|---|---|
| Lisa Purtue | Correctional Officer | 328-2015-075 |

| EXHIBIT NUMBER | DESCRIPTION |
|---|---|
| 001 | Email from Suzanne Miller |
| 002 | Initial Interview with Suzanne Miller |
| 003 | Notice of investigatory/read notice of investigatory Purtue |
| 004 | Reply email from officer Purtue (Part 1 and 2) |
| 005 | Email from Officer Purtue to Beth Dittmann |
| 006 | Post It Note Submitted by Officer Purtue |
| 007 | Initial Interview with Lt. Schultz |

DISTRIBUTION – Original – Investigating Authority, Official Record – ER Investigations File

**Exhibit 508 p. 020**